The issue was accordingly made up, and was tried at the Circuit Court in November, 1808.
The complainants produced a number of credible witnesses, who attested that they had for many years known *644 Nicholas Winckier, sen. and Anna Barbara, who had been fhe widow of David Wonderly. That they lived togcther as man and wife, and he always acknowledged and treated her as his wife; and that she presided in his family as his wife, and was so reputed and known by the. neighbours; and that Nicholas Winckier the younger was the issue of that marriage, and the brother of the complainants Elizabeth and Margaret.
On the other hand the defendant produced the deeds stated, and referred to in his answer, in and by which the said N. Winckier, sen. and.Anna Barbara, transacted business as unconnected persons, with distinct interests ;' and in one of which deeds he calls Nicholas Winclder, jun. his natural son by Anna Barbara Wonderly, widow, &c„
Upon this evidence the jury found a verdict, that Nicholas Winckier, jun. was not the lawful issue of N. Winck-ier, sen. but his natural son.*
*645 The effect of this verdict was to defeat the claim of the complainants to any share in the estate of their hro-ther, so found to be illegitimate. That moiety of his estate which did not go to his widow by the operation of . 7 *646 the statute of February, 1791, escheated to the state. But ^ legislature, on-petition, passed an act to remit the es-c^eat? anc^to vesi property in his sisters, the complainants. x
Desaussuke for complainants.
Peinóle for defendant.

 Tlic subject of marriage, and consequently the legitimacy of children, is on the same loose footing1 in this state that it was in England,, before the statute of 26th, George 2d, oh. 33, and as it is now in Scotland. We have no statute regulating marriages, or providing any form for the celebration of them, or for recording them. And they are usually celebrated in any form the parties please, before a clergyman or magistrate.
Wo must therefore resort to the law as it stood in England, prior to tile statute abovementioned, to ascertain what constitutes a legal marriage, and the legitimacy of children in this country. That law is well slated by Mr. Justice Blackstone,. in his commentaries, 1 vol. chap. 15, p, 433, Ac.
And Sir William Scott has recently examined the subject of marriages in Scotland, [which are not regulated by statute, but remain on the footing of the canon law] with wonderful ability and acuteness, in the case ofDalrymple, the wife, against Dalrymple, the husband.— TIis judgment, delivered in the Consistorial Court of London, in July, 1811, in liis character of chancellor of that diocese, contains a most luminous and complete view of the subject.
lie sums it up by sta ing,
1st. That the law of the country, where the marriage was contracted, must govern, though one of the contracting parties may have been domiciled in another, country. ■
!j!d. It is a civil contract regulated by law,- and endowed witlj civil, *645 consequences ; to which in most civilized countries, tbe sanctions of religion have been superadded.
3d. That marriage having- been erected into a sacrament by the Roman Catholic Church, the marriage contract fell naturally enough under tile ecclesiastical cognizance, with respect both to its cheological and legal constitution.
But the canon law so far respected the natural and civil origin of marriage, as to consider that where the natural and civil contract was formed, it had the full essence of matrimony, without the inter-, vention ofthe priest.
The Ecclesiastical Courts, which had cognizance of ecclesiastical causes, held that, “an irregular marriage, constituted per verba de preesenti, though not followed by any consummation shewn, was valid, to the full extent of voiding a subsequent regular marriage, contracted with another person.” The statute 32, Henry 8th, ch. 38, [made of force here] enacted that marriages solemnized in the face of the church, and consummate with bodily knowledge, shall be deemed good, notwithstanding any precontract of matrimony, not consummate with bodily knowledge, which either or both the parties shall have, made.” This statute was repealed in England by the statute of 2d Edw. 6, ch. 23 : [but the repealing statute has not been adopted here;
See Mi-. Justice Grimke’s collection of the Public Laws.]
The Temporal Courts recognized the doctrine of the Ecclesiastical Courts, as the existing rule of the matrimonial law of the country See Bunting’s case, 4 Coke, 29. In Collins vs. Jesson, 3d of Anne, it was said by Lord Chief Justice Holt, and agreed to by the whole bench, “ that if a contract be per verba de preesenti, it amounts to an actual marriage, which the very parties themselves cannot dissolve by release or other mutual agreement, for it is as much a marriage in the sight of God, as if it had been in facie ecclesite.” “ But a contract per verba de futuro, which do not intimate an actual marriage, but refer to afuture act, is releaseable.” 2 Salk. 437, Mod. 155. In Wigmore’s case, 2d Salk. 438, the same judge said, “ a contract per verba de preesenti, is a marriage ; so is a contract ele futuro, if the contract be. executed, and he take her, it is a marriage.”
And this continued to be the law in the Ecclesiastical Court. Sec the remarkable caseof.Lord Fitzmaurice, Coram Deleg. in 1732, which, was extremely similar to the case of Dalrymple.
The juarriage act of 2Gl\i. Geo. 2d oil, So, put an end to all tliis^ *646 doctrine in England, by establishing a public and regular form, without which, the relation of husband and wife cannot be contracted. — . But that statute did not alter the Scotch law. And that statute not (being made of force here, the law relating to the marriage contract, stands upon the footing it was in England, prior to the statute of George, grounded on the canon law, controlled however by the statute of 32, Henry 8th, ch.38.
The remarkable facility of contracting' matrimony in this state, is strongly contrasted with the impracticability of dissolving the contract. No divorce has ever taken place within the state. The legislature has uniformly refused to grant divorces, op the ground that it was improper for the legislative body to exercise judicial powers. And it has as steadily refused to enact any law to authorize the courts of justice to grant divorces a vinculo matrimonii, on. tlie broad principle that it was a wise policy-to shut that door to do - mestic discord, and to gross immorality in the community